Jennifer A. Hradil, Esq.
Justin T. Quinn, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500

James P. Gillespie, P.C., D.C. Bar 427773
Emily P. Hughes, D.C. Bar 984580
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
(*pro hac vice applications pending*)

*Attorneys for Individual Defendants*
*and Nominal Defendant*

RECEIVED

MAY 05 2014

AT 8:30
WILLIAM T. WALSH, CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS PALKON, Derivatively on Behalf of WYNDHAM WORLDWIDE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN P. HOLMES, ERIC A. DANZIGER, SCOTT G. MCLESTER, JAMES E. BUCKMAN, MICHAEL H. WARGOTZ, GEORGE HERRERA, PAULINE D.E. RICHARDS, MYRA J. BIBLOWIT, BRIAN MULRONEY, STEVEN A. RUDNITSKY, and DOES 1-10,<br>Individual Defendants,<br><br>-and-<br><br>WYNDHAM WORLDWIDE CORPORATION, a Delaware corporation,<br><br>Nominal Defendant. | Civil Action No.: 2:14-CV-01234 (SRC) (CLW)<br><br>**REDACTED MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY INDIVIDUAL DEFENDANTS AND NOMINAL DEFENDANT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**MOTION DATE JUNE 2, 2014** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

I.   THE COMPLAINT FAILS TO ALLEGE THAT THE BOARD
     WRONGFULLY REFUSED PLAINTIFF'S LITIGATION DEMAND. ................... 7

     A.   Plaintiff Has Not Pleaded Particularized Facts that the Board's Decision to
          Refuse the Demand Was Based on an Unreasonable Investigation. ...................... 9

     B.   Plaintiff's Allegations Do Not Meet the Demanding Standard to Plead that
          the Board Acted in Bad Faith in Denying the Demand. ....................................... 12

          1.   Plaintiff Alleges No Plausible Conflict as to Mr. McLester. ..................... 12

          2.   Plaintiff Alleges No Plausible Conflict as to Kirkland & Ellis. ............... 14

II.  PLAINTIFF HAS NOT ADEQUATELY PLEADED ANY STATE LAW
     CLAIMS.................................................................................................... 15

     A.   Plaintiff Fails to State a Claim for Breach of Fiduciary Duty for Failure to
          Maintain Internal Controls............................................................................ 15

          1.   Plaintiff Has Not and Cannot Allege that WWC Lacked Internal
               Controls Concerning Data-Security......................................................... 17

          2.   Plaintiff Alleges No Facts Suggesting that the Individual Defendants
               Consciously Failed to Oversee or Monitor Data-Security Protocols........ 18

          3.   Plaintiff's Complaints Regarding the Defendants' Response to the
               Data-Security Breaches Are Barred by the Business Judgment Rule....... 22

     B.   Plaintiff Alleges No Concealment of Material Information from Investors......... 23

     C.   Plaintiff Fails to State a Claim for Corporate Waste. ........................................ 25

     D.   Plaintiff Fails to State a Claim for Unjust Enrichment. .................................... 27

III. PLAINTIFF'S CLAIMS ARE NOT RIPE AND FAIL TO PLEAD
     COGNIZABLE DAMAGES. ........................................................................... 28

CONCLUSION .................................................................................................... 29

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Koether,*
766 F. Supp. 237 (D.N.J. 1991) ................................................................. 8

*Aronson v. Lewis,*
473 A.2d 805 (Del. 1984) ................................................................. 7, 8, 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................. 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................. 15

*Blasband v. Rales,*
971 F.2d 1034 (3d Cir. 1992) ................................................................. 7

*Brehm v. Eisner,*
746 A.2d 244 (Del. 2000) ................................................................. 8

*Chester Cty. Intermediate Unit v. Pa. Blue Shield,*
896 F.2d 808 (3d Cir. 1990) ................................................................. 7

*Clark v. Lacy,*
376 F.3d 682 (7th Cir. 2004) ................................................................. 26

*Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb,*
385 F. Supp. 2d 449 (D. Del. 2004) ................................................................. 22

*Desimone v. Barrows,*
924 A.2d 908(Del. Ch. 2007) ................................................................. 18, 21

*Diversified Grp., Inc. v. Daugerdas,*
139 F. Supp. 2d 445 (S.D.N.Y. 2001) ................................................................. 27

*Dollens v. Zionts,*
2002 WL 1632261 (N.D. Ill. July 22, 2002) ................................................................. 29

*Emerald Partners v. Berlin,*
787 A.2d 85 (Del. 2001) ................................................................. 22

*FLI Deep Marine LLC v. McKim,*
No. 4138-VCN, 2009 WL 1204363 (Del. Ch. Apr. 21, 2009) ................................................................. 8

*Frank v. Elgamal,*
    2014 WL 957550 (Del. Ch. March 10, 2014) ........................................................ 27

*Gantler v. Stephens,*
    965 A.2d 695(Del. 2009) ...................................................................................... 16

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003) .............................................................................. 16

*Halpert Enters., Inc. v. Harrison,*
    2007 WL 486561 (S.D.N.Y. Feb. 14, 2007) ......................................... 10, 13, 15

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.,*
    2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013) ............................................... 9, 11

*In re Boston Scientific Corp. S'holders Litig.,*
    2007 WL 1696995 (S.D.N.Y. June 13, 2007) ............................................. 10, 14

*In re Bridgeport Holdings, Inc.,*
    388 B.R. 548 (Bankr. D. Del. 2008) ............................................................. 12, 13

*In re Capital One Derivative S'holder Litig.,*
    952 F. Supp. 2d 770 (E.D. Va. 2013) ........................................................... 16, 17

*In re Caremark Int'l Inc. Derivative Litig.,*
    698 A.2d 959 (Del. Ch. 1996) ........................................................................ passim

*In re Citigroup Inc. S'holder Derivative Litig.,*
    964 A.2d 106 (Del. Ch. 2009) ........................................................................ 7, 16

*In re Cray Inc.,*
    431 F. Supp. 2d 1114 (W.D. Wash. 2006) ............................................................ 28

*In re Facebook Inc. IPO Sec. & Derivative Litig.,*
    922 F. Supp. 2d 445 (S.D.N.Y. 2013) .................................................................... 29

*In re Forest Labs., Inc. Derivative Litig.,*
    450 F. Supp. 2d 379 (S.D.N.Y. 2006) ...................................................................... 7

*In re Gen. Motors Class E Stock Buyout Sec. Litig.,*
    790 F. Supp. 77 (D. Del. 1992) ................................................................................ 8

*In re ITT Corp. Derivative Litig.,*
    588 F. Supp. 2d 502 (S.D.N.Y. 2008) .................................................................... 18

*In re Merrill Lynch & Co. Sec., Derivative & ERISA Litig.,*
    773 F. Supp. 2d 330 (S.D.N.Y. 2011) ..................................................... 8, 10, 12

*In re Pfizer Inc. S'holder Derivative Litig.,*
    722 F. Supp. 2d 453 (S.D.N.Y. 2010) ............................................................... 28

*In re Symbol Techs. Sec. Litig.,*
    762 F. Supp. 510  (E.D.N.Y. 1991) ................................................................... 29

*In re Tower Air, Inc.,*
    416 F.3d 229 (3d Cir. 2005) ...................................................................... 12, 23

*In re United Telecomms., Inc. Sec. Litig.,*
    1993 WL 100202 (D. Kan. Mar. 4, 1993) ......................................................... 29

*In re Walt Disney Co. Derivative Litig.,*
    907 A.2d 693 (Del. Ch. 2005) .................................................................... 22, 25

*In re World Health Alternatives, Inc.,*
    385 B.R. 576 (Bankr. D. Del. 2008) ................................................................. 16

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991) ............................................................................................. 7

*Levine v. Smith,*
    591 A.2d 194 (Del. 1991) ....................................................................... 7, 8, 11

*Lewis v. Vogelstein,*
    699 A.2d 327 (Del. Ch. 1997) .................................................................... 25, 26

*Lyondell Chem. Co. v. Ryan,*
    970 A.2d 235 (Del. 2009) ..................................................................... 2, 16, 21

*Malone v. Brincat,*
    722 A.2d 5 (Del. 1998) .................................................................................... 24

*Malpiede v. Townson,*
    780 A.2d 1075 (Del. 2001) ........................................................................ 16, 22

*Mayer v. Belichick,*
    605 F.3d 223 (3d Cir. 2010) .............................................................................. 7

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,*
    854 A.2d 121 (Del. Ch. 2004) ......................................................................... 24

*Morefield v. Bailey,*
    959 F. Supp. 2d 887 (E.D. Va. 2013) ........................................................ 18, 21

*Mount Moriah Cemetery v. Moritz,*
    1991 WL 50149 (Del. Ch. Apr. 4, 1991) .......................................................... 11

*Nemec v. Shrader,*
   991 A.2d 1120 (Del. 2010) .................................................................................. 27

*Oran v. Stafford,*
   226 F.3d 275 (3d Cir. 2000) .................................................................................. 7

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
   998 F.2d 1192 (3d Cir. 1993) ................................................................................ 7

*RCM Sec. Fund, Inc. v. Stanton,*
   928 F.2d 1318 (2d Cir. 1991) ................................................................................ 8

*Ryan v. Gifford,*
   918 A.2d 341 (Del. Ch. 2007) .............................................................................. 8

*Spiegel v. Buntrock,*
   571 A.2d 767 (Del. 1990) ................................................................................. 8, 9

*Stone v. Ritter,*
   911 A.2d 362 (Del. 2006) ........................................................................ 16, 17, 18

*Stroud v. Grace,*
   606 A.2d 75 (Del. 1992) ...................................................................................... 24

*Trudeau v. Fed. Trade Comm'n,*
   384 F. Supp. 2d 281 (D.D.C. 2005) .................................................................... 29

*Vitellone v. Evans,*
   2013 WL 6806179 (S.D. Tex. Dec. 20, 2013) ................................................... 19

*White v. Panic,*
   783 A.2d 543 (Del. 2001) .................................................................................... 26

*Zirn v. VLI Corp.,*
   681 A.2d 1050 (Del. 1996) .................................................................................. 24

**Statutes**

8 DEL. GEN. CORP. LAW § 220 ................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 7, 8, 16

Fed. R. Civ. P. 23.1 ........................................................................................... 7, 8

Fed. R. Civ. P. 23.1(b) ......................................................................................... 7

**Other Authorities**

E. Norman Veasey & William F. Mongan,
 *Fiduciary Duties of Directors in Control Contests*,
 592 PLI/Corp. 449, 460 (Jan. 11, 1988).................................................................................... 24

Plaintiff seeks to force Wyndham Worldwide Corporation ("WWC" or the "Company") to file a lawsuit that WWC's Board of Directors previously determined is both ill-founded and not in WWC's best interest.  Plaintiff claims that WWC's directors and certain officers are personally liable to the Company for injuries that WWC allegedly sustained (or may potentially sustain at some future time) in connection with cyberattacks perpetrated by criminals illegally accessing financial information of some of WWC's customers.  The Complaint should be dismissed because Plaintiff's attempt to assert claims on behalf of WWC is foreclosed by long-standing precedent establishing that boards of directors, not individual shareholders and their counsel, control the litigation decisions of corporations.

A shareholder derivative plaintiff must first make a litigation demand on the board.  If that demand is refused, a plaintiff bears the *considerable* burden to show that a board's refusal was wrongful because it acted in bad faith or based on an investigation so unreasonable as to support a conclusion that the decision was unintelligent, unadvised, or outside the bounds of reason.  Only where a plaintiff pleads *particularized* factual allegations to show that the board's demand refusal is not protected by Delaware's strong business judgment presumption may he proceed to litigate on behalf of the corporation.

The Complaint utterly fails to satisfy that exacting burden.  Plaintiff does not plausibly allege that WWC's Board refused his demand in bad faith or based on an unreasonable investigation.  Rather, the Complaint and attached exhibits plainly illustrate the Board's sustained attention to WWC's data-security policies: WWC hired five expert data-security consulting firms to investigate the breaches and advise the Company on remedial measures and the Audit Committee and Board discussed the breaches and related data-security matters at no less than 30 meetings.  Against this backdrop of extensive expert investigations and discussion, both the Audit Committee and Board

considered Plaintiff's demand and reasonably determined that the litigation was not in the Company's best interests. *See Part I.A.*

Unable to allege plausibly that this decision was based on an unreasonable investigation, Plaintiff attacks the Board's refusal by alleging that its decision was not in good faith. Plaintiff theorizes that the Board acted in bad faith by relying on information and analysis provided by WWC's general counsel and outside counsel because (i) its general counsel supposedly faces personal liability for the cyberattacks, and therefore is conflicted, and (ii) WWC's outside counsel, in turn, is beholden to the general counsel. But the Complaint fails to plead particularized facts sufficient to raise an inference that either WWC's general counsel or outside counsel suffered any conflict at all, let alone a conflict so egregious that the Board's consideration of or reliance on their advice could conceivably be in bad faith. Because Plaintiff's factual allegations are wholly insufficient to create the reasonable doubt necessary to rebut the business judgment presumption that protects the Board's decision, the Complaint should be dismissed. *See Part I.B.*

Even if the Complaint had pleaded adequately that the Board's refusal was somehow wrongful—and it has not—it still must be dismissed for the independent reasons that it fails to state any claims against the Individual Defendants for breach of fiduciary duty, corporate waste, or unjust enrichment and, in any event, those claims are unripe.

- Plaintiff's breach of fiduciary duty claim based on the Individual Defendants' putative failure to oversee WWC is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment," *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996), and the Complaint is devoid of the "extreme set of facts" required to survive a motion to dismiss, *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009). In fact, far from pleading facts suggesting of a lack of oversight, the Complaint and its exhibits illustrate the Individual Defendants' extensive diligence in responding to the cyberattacks in a prudent manner. *See Part II.A.*

- Plaintiff's fiduciary duty claim, premised on the Individual Defendants' purported failure to disclose the data breaches, fails for multiple reasons, most notably that the Complaint identifies no disclosure duty or any possible damages to the Company. *See Part II.B.*

2

- Plaintiff's corporate waste and unjust enrichment claims also fail because they improperly attempt to repackage deficient fiduciary duty claims. *See Part II.C.*

- Finally, Plaintiff's damages claims are also unripe because they are based on alleged damages that cannot be determined before the completion of other litigation. *See Part III.*

For all of these reasons, the Complaint should be dismissed.

## FACTUAL BACKGROUND

Nominal Defendant WWC, a Delaware corporation, is one of the world's largest hospitality companies. Compl. ¶ 13. WWC operates its lodging business through wholly-owned subsidiary, Wyndham Hotel Group, LLC ("WHG"), and WHG has various wholly-owned subsidiaries, including Wyndham Hotels and Resorts Inc. ("WHR") and Wyndham Hotel Management Inc. ("WHM"). *Id.* WHR licenses the Wyndham brand name to independently-owned hotels, which operate individual hotels. WHM, in contrast, manages independently owned and two company-owned Wyndham-branded hotels through management agreements with the owners of those hotels. *Id.* ¶ 10. During the time period relevant to the Complaint, WHR and WHM licensed the Wyndham brand name to approximately ninety independently-owned hotels.[1] *Id.* ¶ 36.

WHR operates a website through which consumers make reservations at Wyndham-branded hotels, and maintains a computer network to provide services to those hotels. Each Wyndham-branded hotel also operates a computer network, called a property management system, which handles, *inter alia*, customer reservation information and credit card payment data. These systems are separate from, but linked to, WHR's network. *See generally id.* ¶¶ 2, 37, 45-46.

On three occasions between April 2008 and January 2010, hackers attacked WHR's computer network and gained unauthorized access to the individual property management systems of

---

[1] Although WWC has multiple operating subsidiaries, Plaintiff ignores the distinction between WWC and its subsidiaries to make generalized allegations about WWC. On a motion to dismiss, however, the Complaint's allegations are accepted as true and, in any event, the distinctions are not material on this motion.

several Wyndham-branded hotels. *Id.* ¶ 45. As a result of these intrusions, Plaintiff alleges that criminals gained access to customers' personal and financial information, including payment card information stored on the property management system servers. *Id.* Plaintiff alleges that the criminal conduct occurred because of WWC's failure to implement "reasonable data-security practices." *Id.* ¶ 51.

As the Complaint and exhibits set forth, WWC's Board of Directors actively monitored issues related to the cyberattacks and data-security at WWC more generally, including the investigation of the causes of the breaches and the development of security enhancements to remedy vulnerabilities discovered as a result of the cyberattacks. █████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 63 and Ex. F at 16. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Compl. Ex. F at 4.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at 3. ██

████████████████████████████████████████████████████

████████████████████████████ *Id.* at 4. On June 26, 2012, the Federal Trade Commission ("FTC") filed a lawsuit against WWC and three of its subsidiaries in connection with the breaches ("FTC Action"), alleging that WWC's security practices were unfair and deceptive trade practices in violation of the FTC Act. *See* Compl. ¶ 60.

In November 2012, Plaintiff's counsel submitted a demand letter to the Board on behalf of Daniel Himmel, a purported shareholder, requesting an investigation into potential breach of fiduciary duty claims against WWC's directors and officers related to the cyberattacks. *See Id.* ¶ 75 & Ex. E. The Board authorized the Audit Committee to investigate the demand. Compl. ¶ 84. In March 2013, after due consideration by the Board and Audit Committee, ███████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████ informed Mr. Himmel that the Board unanimously voted to deny his demand. *See* Compl. Ex. E. The refusal letter detailed a number of reasons why the Board had concluded that pursuing the demand was not in WWC's best interests. *Id.* ¶ 79. Mr. Himmel did not pursue shareholder derivative litigation.

In June 2013, Plaintiff Dennis Palkon, also a purported WWC shareholder at the time of the alleged wrongdoing, submitted through the same counsel as Mr. Himmel, a second, "virtually identical" demand letter to the Board, repeating Mr. Himmel's request for an independent investigation into the role of the WWC directors and officers in overseeing the Company's internal controls for data-security, and potential breaches of fiduciary duty and other wrongdoing. *Id.* ¶¶ 74-75, 78. WWC timely responded to Plaintiff, explaining that the Board would address the demand and requesting that Plaintiff provide evidence of his status as a shareholder. *Id.* ¶ 75 & Ex. B. Although Plaintiff refused to provide sufficient information to confirm his status as a shareholder at relevant times, "both the Audit Committee and the full Wyndham Board … considered [Plaintiff's] letter and the demands made therein." Compl. Ex. D at n.-1. The Board discussed Plaintiff's demand at a meeting on August 8, 2013, and unanimously voted to deny it. Compl. ¶ 80. On August 20, 2013, Mr. McLester sent a letter to Plaintiff's counsel explaining that the Board and

Audit Committee had reviewed the demand and voted to deny it for the same reasons it denied Mr.

Himmel's November 2012 demand. *Id.* ¶ 82 & Ex. D.

In September 2013, Plaintiff submitted a demand under 8 DEL. GEN. CORP. LAW § 220, to

inspect the books and records relating to the Board's evaluation and refusal of his litigation demand

and the Company's remedial measures related to the allegations in the demand. *Id.* ¶ 92 & Ex. G. In

December 2013, following a dialogue concerning the proof required to establish Plaintiff's status as

a shareholder—and thus his entitlement to make an inspection demand—WWC produced documents

to Plaintiff. ███████████████████████████████████████████████████████

████████████████████████████████████████████ *See id.* ¶ 98.

Plaintiff filed this lawsuit on February 25, 2014, asserting claims for breaches of fiduciary

duty, unjust enrichment, and corporate waste against WWC, as the Nominal Defendant. Plaintiff has

also sued Stephen P. Holmes, CEO and Chairman of the Board, Eric A. Danziger, Steven A.

Rudnitsky, and Mr. McLester, officers of WWC (the "Officer Defendants"), James. E. Buckman,

Michael H. Wargotz, George Herrera, Pauline D.E. Richards, Myra J. Biblowit, and Brian Mulroney,

members of the Board of Directors, *id.* ¶¶ 14-23 (the "Director Defendants"), and ten so-called "John

Doe" Defendants, *id.* ¶ 24 (collectively, the "Individual Defendants").

## ARGUMENT

There are three independent reasons to dismiss the Complaint. *First*, Plaintiff fails to allege

particularized facts showing that the Board's demand refusal was based on an unreasonable

investigation or was in bad faith. *Second*, even if the Board's refusal was somehow wrongful—and

it was not—the Complaint must also be dismissed because it fails to state a claim. *Third*, any

damages are speculative and therefore unripe. Each point is reviewed *seriatim*.

## I.   THE COMPLAINT FAILS TO ALLEGE THAT THE BOARD WRONGFULLY REFUSED PLAINTIFF'S LITIGATION DEMAND.

Plaintiff claims that the Board wrongfully denied his demand because: (1) its decision purportedly was not informed; and (2) it did not investigate in good faith because it relied on information and analysis provided by purportedly conflicted counsel. *See* Compl. ¶¶ 80, 81, 85. Under Delaware law, it is a "cardinal precept … that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).[2] This includes the authority to decide "whether to initiate or pursue a lawsuit on behalf of the corporation." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009). A shareholder, however, may compel a corporation to pursue litigation if he "make[s] a pre-suit demand by presenting the allegations to the corporation's directors, requesting that they bring suit, and showing that they wrongfully refused to do so." *Id.* (citation omitted); *see also* Fed. R. Civ. P. 23.1(b). The pleading standard under Federal Rule 23.1 "is higher than the standard applicable to a pleading subject to a motion to dismiss pursuant to Rule 12(b)(6)" and "requires ***particularized*** allegations" of fact to show a wrongful refusal.[3] *In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 387 (S.D.N.Y. 2006); *Levine v. Smith*, 591 A.2d 194, 211 (Del. 1991) ("In properly rejecting plaintiff's contention that the court should apply the more lenient Rule 12(b)(6) 'notice pleading' standard, the court reasoned that a notice form of pleading would contravene the policy underlying Rule 23.1 and

---

[2]   Federal Rule of Civil Procedure 23.1 "does not ***create*** a demand requirement of any particular dimension," rather the "substantive requirements of [a] demand are a matter of state law." *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992) (emphasis in original; hereinafter, all emphasis is added unless otherwise indicated) (citations and quotations omitted). Delaware substantive law applies here because WWC is a Delaware corporation. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991); *Blasband*, 971 F.2d at 1047.

[3]   When deciding a motion to dismiss, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (court may take judicial notice of public disclosure documents filed with the SEC); *Chester Cty. Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990) (court "properly considered" exhibits attached to the complaint in granting the motion to dismiss).

the clear mandate of *Aronson.*"). "Rule 23.1 is not satisfied by conclusory statements or mere notice

pleading." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). Delaware courts require shareholder

derivative actions to meet this high bar because otherwise there would be:

> [A] myriad of individual shareholders ... bringing potentially frivolous lawsuits on
> behalf of the corporation, which may tie up the corporation's governors in constant
> litigation and diminish the board's authority to govern the affairs of the corporation.

*Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007) (citation omitted).

Where a demand is made, the directors' refusal to bring suit is presumptively an exercise of

reasonable business judgment, and the plaintiff must make "well-pleaded allegations of fact which

create a reasonable doubt that a board of directors' decision is protected by the business judgment

rule." *Levine*, 591 A.2d at 211; *see also Spiegel v. Buntrock*, 571 A.2d 767, 773-74 (Del. 1990);

*Abrams v. Koether*, 766 F. Supp. 237, 254 (D.N.J. 1991). The directors' decision is protected unless

the shareholder can carry the "considerable burden" of showing that the decision was made in bad

faith or based on an unreasonable investigation.[4] *In re Merrill Lynch & Co. Sec., Derivative &*

*ERISA Litig.*, 773 F. Supp. 2d 330, 345 (S.D.N.Y. 2011) (quoting *RCM Sec. Fund, Inc. v. Stanton*,

928 F.2d 1318, 1328 (2d Cir. 1991)). "[F]ew, if any, plaintiffs surmount this obstacle." *Id.* It is not

enough simply to plead that the board's decision was wrong. *See Brehm*, 746 A.2d at 264. Rather,

"plaintiffs must allege facts to support the conclusion that the Board *acted with so little information*

*that their decision was 'unintelligent and unadvised,' or outside of the 'bounds of reason and*

*reckless.'*" *In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 790 F. Supp. 77, 78 (D. Del. 1992)

(alterations omitted). But "if the requirements of the traditional business judgment rule are met, the

---

[4] The Complaint makes the conclusory assertion that the "Board did not independently [and] disinterestedly ... consider the Litigation Demand." Compl. ¶ 80. But Plaintiff cannot litigate the Board's independence because he has already conceded it . *See Levine*, 591 A.2d at 212 (By making a demand, a plaintiff "concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation.") (quoting *Spiegel*, 571 A.2d at 777); *see also Abrams*, 766 F. Supp. at 254; *FLI Deep Marine LLC v. McKim*, No. 4138-VCN, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009) (plaintiff "conclusively conceded the independence of the Board" by making a demand).

board of directors' decision not to pursue the derivative claim will be respected by the courts ... [and] a board of directors' motion to dismiss ... must be granted." *Spiegel*, 571 A.2d at 777.

### A.   Plaintiff Has Not Pleaded Particularized Facts that the Board's Decision to Refuse the Demand Was Based on an Unreasonable Investigation.

The Complaint falls far short of clearing the high hurdle of pleading particularized facts showing that the Board's investigation was so lacking that it renders the demand refusal unintelligent and unadvised.  Rather, the allegations amount to nothing more than:

> [P]laintiff's subjective disagreement with the ultimate merits of the board's refusal of his demand letter. *But Delaware [law] does not permit a court [to] second-guess the substantive merits of a demand's refusal or to prescribe a board's deliberation process*, so long as the board conducts itself in good faith.

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 2013 WL 1777766, at \*8 (S.D.N.Y. Apr. 25, 2013).  As the Complaint makes clear, the Board acted in good faith and on the basis of a multi-year investigation in which WWC was advised by five expert data-security firms and outside counsel.  As in numerous other cases sustaining a board's refusal under the business judgment rule, WWC's board "received plaintiff's demand, referred it to the audit committee for consideration, and concluded that the risks posed by other, parallel litigations outweighed any possible recovery." *Id.*

Although Plaintiff claims that the Board failed to investigate or that its investigation was unreasonable, *see* Compl. ¶¶ 81, 84, Plaintiff's substantive allegations impeach those conclusory assertions.  ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ *Id.* ¶ 84. ███████████████████████████████

███████████████████████████████████████████████ Documents attached to the Complaint show that "both the Board and the Audit Committee ... devoted substantial attention to data-security issues and to the dispute with the FTC," and thus, the Board's review of the demands "[did] not occur in a vacuum." Compl. Ex. E.

Moreover, the business judgment rule does not require a separate investigation in response to a shareholder demand, but instead permits boards to rely on prior investigations undertaken in relation to conduct at issue in a shareholder demand. *See, e.g., In re Boston Scientific Corp. S'holders Litig.*, 2007 WL 1696995, at *5 (S.D.N.Y. June 13, 2007) (demand was not wrongfully refused where directors reviewed evidence gathered in underlying investigation instead of conducting a separate investigation or interviews related to the demand); *In re Merrill Lynch*, 773 F. Supp. 2d at 347-48 (demand was not wrongfully refused where directors considered it within context of other investigations and proceedings); *Halpert Enters., Inc. v. Harrison*, 2007 WL 486561, at *5-6 (S.D.N.Y. Feb. 14, 2007) (demand was not wrongfully refused where the board's decision relied on prior investigations). ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *See* Compl. Ex. F at 3, 12.

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Compl. ¶ 63. █████████████████████████████████████████

████ *Id.* The Complaint itself establishes the Board's detailed and sustained attention to the issues raised by Plaintiff's demand. *See In re Merrill Lynch*, 773 F. Supp. 2d at 349 ("[T]here is every reason to believe that the … Board was already quite familiar with the allegations in plaintiff's letters from its consideration of the various other proceedings referred to in the letters."). In sum, the pleaded facts readily refute any suggestion that the directors' investigation was so deficient as to be

grossly negligent, as the Complaint must do to overcome the business judgment rule. *See Mount Moriah Cemetery v. Moritz*, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991).

Finally, the Board's decision to reject Plaintiff's demand was made within the context of Mr. Himmel's prior, nearly identical demand, which the Board had already considered and rejected. Compl. ¶¶ 75, 80, 84-88. As set forth in the Board's response to the first demand, the Audit Committee and the Board were briefed on and considered the demand at four meetings and "both the Audit Committee and the full Board ... determined that it [was] not in Wyndham's best interests for the Board to cause Wyndham to pursue the claims outlined in [Himmel's] letter at th[at] time." Compl. Ex. E at 2. The letter also highlighted several considerations informing the Board's decision, including: (i) that Wyndham has strong defenses in the FTC Action; (ii) "commencing ... litigation against allegedly responsible individuals ... would impair Wyndham's defense in the FTC's lawsuit"; (iii) the claims raised by the shareholder are not ripe; (iv) there has been no damage to shareholders as a result of the FTC Action; and (v) "other significant legal barriers to a lawsuit as contemplated by [Himmel's] letter." *Id.* When Plaintiff made his "virtually identical" demand, which identified no material developments since the Board refused the first demand, the Audit Committee and Board again considered it and determined that it remained not in WWC's best interests to pursue such litigation. *See* Compl. Ex. D & n.1.

The very weakness of Plaintiff's claims reinforces the reasonableness of the Board's decision. *See **Part II & III.*** Indeed, "[t]he only reasonable inference to be drawn" from the allegations in the Complaint, combined with the reasons set forth in the Board's letter rejecting Plaintiff's demand, is that the Board did "act in an informed manner in addressing [the] demand." *Levine*, 591 A.2d at 214; *In re Bank of Am.*, 2013 WL 1777766, at *7 (finding plaintiff's allegations of wrongful refusal implausible in light of demand refusal letter that set forth reasons for the board's

11

decision); *In re Merrill Lynch*, 773 F. Supp. 2d at 347-48 (rejecting plaintiff's allegations of wrongful refusal where demand refusal letter stated that Board considered demand and gave reasons why pursuing it was not in the company's best interests).

> **B.      Plaintiff's Allegations Do Not Meet the Demanding Standard to Plead that the Board Acted in Bad Faith in Denying the Demand.**

Recognizing that the Board's decision to refuse the demand was not unintelligent or outside the bounds of reason, Plaintiff instead attacks the Board's demand refusal as in bad faith, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ Compl. ¶¶ 81, 85-86.  To rebut the protective presumption of the business judgment rule, Plaintiff must plead particularized facts that "demonstrate that *no reasonable business person could possibly authorize the action in good faith*" or that the decision is "*so far beyond the bounds of reasonable business judgment that its only explanation is bad faith*."  *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).  The Complaint does not approach satisfying this demanding standard.

> **1.      Plaintiff Alleges No Plausible Conflict as to Mr. McLester.**



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Compl. ¶¶ 80-81.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 80.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "Different corporate offices obviously hold different responsibilities."  *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 573 (Bankr. D. Del. 2008).  Thus, a complaint "fails to state a claim against an ... officer for breach of

fiduciary duty when it fails to allege *facts demonstrating* that (1) he took part in the challenged conduct and (2) failed to demonstrate the due care attendant to his particular office in doing so." *Id.*

█████████████ Compl. ¶ 80. But even assuming the Complaint pleaded particular facts showing that █████████████████████████ the Company indemnifies directors and officers. ██████ for all claims other than bad faith actions. *See Wyndham Worldwide Corporation, Current Report* (Form 8-K), Ex. 3.2, Art. 7; Ex. 3.3, Art VIII, § 2 (May 10, 2012) (Hradil Decl., Ex. A) (providing that the "Corporation shall indemnify its directors and officers to the fullest extent authorized or permitted by law" so long as "such person acted in good faith"). In other words, absent a showing of bad faith—which the Complaint does not purport to make— ████████████████████████

In any event, generalized allegations that defendants "faced a threat of personal liability—in effect, that the [defendants] were investigating whether to sue themselves" are insufficient to show that the demand was wrongfully refused. *Halpert Enters., Inc.*, 2007 WL 486561, at *6. Rather, a plaintiff must "allege specific facts" that raise the question whether specific defendants acted in "bad faith." *Id.* Plaintiff does not approach pleading any facts—let alone the required particularized facts—to support an inference that ████████████████████████████



███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Compl. ¶¶ 79-80.  But

Plaintiff pleads no particularized facts showing that ████████████████████████

██████████████████████████████ *Id.* ¶ 84.  In fact, as the Complaint

makes clear, the opposite is true: the Board held several data-security meetings before either of the

shareholder demands were made and before ███████████████████████████ *See*

*id.* ¶ 30. ███████████████████████████████████████Simply put,

there are no well-pleaded, particularized factual allegations that the Board acted in bad faith █

███████████████████████

      **2.**    **Plaintiff Alleges No Plausible Conflict as to Kirkland & Ellis.**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ *Id.* ¶¶ 89-90.  But again, Plaintiff pleads no

particularized facts demonstrating that the Board acted in bad faith ██████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████  *See, e.g., In re Boston Scientific Corp.*, 2007 WL 1696995, at *5 (demand

refusal not improper where committee was advised by a law firm involved in underlying litigation

and which only reviewed evidence gathered in the underlying litigation rather than conducting a

separate investigation); *Halpert Enters., Inc.*, 2007 WL 486561, at *5-6 (demand refusal not improper where board appointed Audit Committee to review demand with advice of outside counsel who had been involved in related litigations and reviewed only prior investigative materials).

What is more, as the documents attached to the Complaint show,



*See* Compl. Ex. E & F.

Compl. Ex. F at 3-4.

*See* Compl. ¶ 63; Ex. F at 15-17. Plaintiff's allegations do not come close to demonstrating bad faith by the Board in investigating, considering, and denying the demand.

## II.   PLAINTIFF HAS NOT ADEQUATELY PLEADED ANY STATE LAW CLAIMS.

Even if the Board's refusal of Plaintiff's demand was somehow wrongful—and it was not— the Complaint still must be dismissed under Rule 12(b)(6) because it does not contain factual allegations sufficient to raise the probability of a right to relief above speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the Complaint must include "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).

### A.   Plaintiff Fails to State a Claim for Breach of Fiduciary Duty for Failure to Maintain Internal Controls.

Plaintiff alleges that the Individual Defendants engaged in a "knowing and culpable violation of their obligations as officers and directors of WWC," Compl. ¶ 28, by "fail[ing] to implement a system that would provide reasonable and appropriate security for the personal information collected

15

and maintained" by the Company, *id.* ¶ 64.  A failure of oversight claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967; *see also In re Citigroup Inc.*, 964 A.2d at 125 (a plaintiff faces an "extremely high burden" to "state a claim for personal director liability for a failure to see the extent of a company's business risk").  To plead a viable *Caremark* claim, a plaintiff "must allege well-pleaded facts" that the officers and directors breached their duties of loyalty and good faith. *Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001); *see also Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003) (A *Caremark* claim "requires a showing that the directors breached their duty of loyalty by failing to attend to their duties in good faith.").  Delaware courts have recognized that the *Caremark* standard for liability applies equally to officers and directors.  *See In re World Health Alternatives, Inc.*, 385 B.R. 576, 592 (Bankr. D. Del. 2008) ("[T]he *Caremark* decision itself suggests that the same test would be applicable to officers."); *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009) ("[T]he fiduciary duties of officers are the same as those of directors.").

To survive a motion to dismiss, Plaintiff must allege facts—not mere conclusions—showing either that the directors and officers: (1) "utterly failed to implement any reporting or information system or controls"; or (2) that "having implemented such a system or controls, [they] consciously failed to monitor or oversee its operations[,] thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  "In either case, imposition of liability requires a showing that the directors [or officers] knew that they were not discharging their fiduciary obligations." *Id.*  "Importantly, this is a difficult standard to meet because 'an extreme set of facts is required to sustain a disloyalty claim' premised on the notion that directors [or officers] were disregarding their duties." *In re Capital One Derivative S'holder Litig.*, 952 F. Supp. 2d 770, 784 (E.D. Va. 2013) (quoting *Lyondell*, 970 A.2d at 243).  The Complaint falls

16

far short of these standards—it pleads only scant, threadbare recitals that each of the named officers and directors "failed to implement a system of internal controls." *See* Compl. ¶¶ 14-23.

### 1. Plaintiff Has Not and Cannot Allege that WWC Lacked Internal Controls Concerning Data-Security.

Plaintiff cannot sustain a *Caremark* claim on the thin allegation that the Individual Defendants are "responsibl[e] for three separate data breaches" because they resulted from "WWC's complete and utter lack of appropriate security measures." Compl. ¶ 3; *see also id.* ¶¶ 51, 64(b). The Complaint contains only rote, conclusory assertions—not a single particularized fact pleaded as to any of the officers or directors—that the Individual Defendants "failed to implement a system of internal controls to protect customers' personal and financial information." *Id.* ¶¶ 14-23.

To the contrary, the Complaint identifies numerous controls that were in place to detect and prevent data breaches, and alleges only that these controls were inadequate because hackers were able to penetrate WWC's systems. *See, e.g., id.* ¶ 64(f) (acknowledging that access to property management servers required password-protected user accounts); *id.* ¶ 53 (noting that WWC had mechanisms to search for and find "the memory-scraping malware used in the previous attack"); *see also id.* ¶ 64(c). Plaintiff's allegations also indicate that WWC had a Privacy Policy that detailed its commitment to protecting customers' personal information, *see id.* ¶ 62, and ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ *see id.* ¶ 63. Thus, Plaintiff cannot sustain a *Caremark* claim based on the Individual Defendants' purported "utter[] fail[ure] to implement any reporting or information system or controls" for data-security because the Complaint acknowledges that various control measures did exist. *Stone*, 911 A.2d at 369-70; *see also Capital One*, 952 F. Supp. 2d at 785 (dismissing *Caremark* claim based on failure to implement internal controls where "the complaint[] allege[d] only that the controls that were implemented failed to prevent the alleged wrongdoing."); *Morefield*

*v. Bailey*, 959 F. Supp. 2d 887, 905 (E.D. Va. 2013) ("Plaintiff cannot proceed on the theory that no oversight system existed, as she acknowledges the presence of the Audit Committee and 'multiple high-level investigations into the Company's internal controls and accounting practices.'").

>    2.    **Plaintiff Alleges No Facts Suggesting that the Individual Defendants Consciously Failed to Oversee or Monitor Data-Security Protocols.**

Unable to maintain that WWC utterly lacked data-security protocols, Plaintiff's alternative *Caremark* theory is that the Individual Defendants "knew or should have known that the Company's deficient security systems and unreasonably vulnerable technologies would cause third parties to attack these systems and to obtain access to the data provided by its Customers," yet nonetheless "failed to take corrective measures to update the systems and technologies." Compl. ¶ 65. The Complaint pleads no facts suggesting that any of the officers or directors "knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that [they] chose to do nothing about [known] control deficiencies." *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007) (citing *Stone*, 911 A.2d at 373). "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Id.*

*No Failure To Monitor Prior to the First Security Breach.* Plaintiff alleges no facts to suggest that the Individual Defendants consciously disregarded their duties of oversight prior to the first data-security breach. A plaintiff can plead a conscious failure to monitor by identifying "red flags"—obvious warning signs—to support an inference that management knew of material weaknesses in internal controls, yet failed to correct such weaknesses. *See, e.g., In re ITT Corp. Derivative Litig.*, 588 F. Supp. 2d 502, 512-13 (S.D.N.Y. 2008). As discussed above, however, WWC had data-security protocols. Plaintiff pleads no facts to support an inference that any of the officers or directors knew or should have known of any deficiencies in these protocols prior to

18

September 2008 when WWC discovered the first cyberattack. The Complaint simply fails to identify any red flags. Accordingly, there is no basis to infer that the Individual Defendants were on notice of any data-security vulnerabilities and **consciously** disregarded a duty to correct such weaknesses and prevent the first cyberattack. *See Vitellone v. Evans*, 2013 WL 6806179, at *8 (S.D. Tex. Dec. 20, 2013) (dismissing *Caremark* claim where "Plaintiff [did] not allege particular facts demonstrating that any—much less a majority—of Defendants were aware of material weaknesses in [the Company's] internal controls before the time periods when these disclosures [of the weaknesses] were made, and that they thereafter failed to act to eliminate those weaknesses").

Nor can Plaintiff satisfy the burden of pleading knowledge of data-security deficiencies through conclusory assertions that the Individual Defendants should have been aware of the specific vulnerabilities that led to the first breach. *See* Compl. ¶ 49 ("The Individual Defendants **knew or recklessly disregarded** that the [Phoenix, Arizona] hotel was using [an] unsupported and insecure server, yet continued to allow it to connect to Hotels and Resorts' computer network."). The allegations indicate only that the data breaches occurred because third-party criminals were able to gain access to WHR's computer network by exploiting relatively obscure system vulnerabilities, such as WHR's user account password complexity requirements or the particular network configuration procedures of one Wyndham-branded hotel. *See id.* The Complaint contains not one single fact specific to any of the named officers or directors to suggest that they knew or should have known about these particular vulnerabilities at one hotel. *See Caremark*, 698 A.2d at 971 ("[T]he duty to act in good faith to be informed cannot be thought to require directors to possess detailed information about all aspects of the operation of the enterprise.").

**No Failure To Monitor After The First Security Breach**. The Complaint also fails to plead a *Caremark* claim based on the Individual Defendants' conduct following discovery of the first



breach. Plaintiff alleges that "[a]fter discovering each of the first two breaches, the Individual Defendants failed to take appropriate steps in a reasonable time frame to prevent the further compromise of [WHR's] network." Compl. ¶ 45. The essence of Plaintiff's claim is that the second and third cyberattacks would not have occurred if the Individual Defendants had not consciously disregarded their responsibilities. The Complaint, however, demonstrates that following the first attack, the Board undertook a reasonable, good-faith effort to investigate the breaches and successfully remedy the underlying vulnerabilities.

*See id.* ¶ 64. The Complaint and exhibits illustrate that WWC responded promptly and prudently upon discovery of the first breach by

*See* Compl. Ex. F at 4. The materials attached to the Complaint show that

*Id.* at 3. Following discovery of the second breach in May 2009,

*Id.*

*Id.; see also id.* at 2

.

███████████████████████████████████████████████████████ *Id.* at

4.  As a result of WWC's sustained and comprehensive efforts ███████████

███████████████████████████████████████████████████████

████████████████████ *Id.*

Accordingly, the Complaint does not meet the significant burden to show that the Individual Defendants "knowingly and ***completely failed*** to undertake their responsibilities … [in] breach their duty of loyalty." *Lyondell*, 970 A.2d at 243-44. Because the Complaint and attached exhibits plainly pleads action by the Board and senior management, Plaintiff must allege facts to rebut those facts, which Plaintiff fails to do. "Plaintiff's allegations fall far short of painting a picture of a conscious breach 'so persistent that it could not be ascribed to anything other than a knowing decision not to even try to' develop and implement a system for legal compliance." *Morefield*, 959 F. Supp. 2d at 905 (citing *Desimone,* 924 A.2d at 935). *Caremark* does not hold fiduciaries to a standard of success. As such, Plaintiff cannot show bad faith merely because hackers perpetrated subsequent attacks despite WWC's response to prior data breaches. Moreover, in this case, ***third parties***—not any WWC employee, officer, or director—engaged in criminal conduct against WWC and its customers. And thus, it is notable that even where a corporation's ***own*** employees engage in illegal conduct, "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone,* 924 A.2d at 940. As the *Caremark* Court cautioned, conclusory labels such as those employed by Plaintiff to describe the Board's actions as "irrational," "unreasonable," or "inappropriate" are insufficient to plead liability. *Caremark*, 698 A.2d at 965, 967-68.

---

[5]   PCI-DSS refers to the Payment Card Industry Data Security Standard, an information security standard created by the Payment Card Industry Security Standards Council to establish best security practices for banks, processors, developers, merchants, and other vendors that transmit cardholder data to use in protecting this data. *See* https://www.pcisecuritystandards.org/security_standards/.

3.    **Plaintiff's Complaints Regarding the Defendants' Response to the Data-Security Breaches Are Barred by the Business Judgment Rule.**

As discussed above, Plaintiff's fiduciary duty claim focuses not on facts suggesting conscious disregard or bad faith, but rather on his disagreement with the effectiveness of WWC's response to the cyberattacks.  These quibbles, at best, amount to nothing more than an alleged breach of the duty of care.  "If a defendant does not breach his duty of loyalty to the company, he is permitted to rely on the business judgment rule or an exculpatory provision, if applicable, to shield him from liability for a breach of the duty of care."  *Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) (citing *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001)).  No viable duty of care claim can be asserted against the Director Defendants because WWC's Certificate of Incorporation exculpates violations of the duty of care.[6]  As to the Officer Defendants, a duty of care claim fails under the business judgment rule.

The fiduciary duty of due care requires that officers and directors "use that amount of care which ordinarily careful and prudent men would use in similar circumstances, and consider all material information reasonably available in making business decisions."  *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) (quotations omitted).  Deficiencies in business decision-making are actionable only if the actions are grossly negligent.  *Id.*  But to show a breach of the duty of care, a plaintiff must overcome the business judgment rule, which protects officers of a corporation who have acted on an informed basis and in good faith.  *See Aronson*, 473 A.2d at 811; *see also* E. Norman Veasey & William F. Mongan, *Fiduciary Duties of Directors in Control*

---

[6]    Delaware General Corporation Law Section 102(b)(7) permits shareholders to "exculpate directors from any personal liability . . . for breaches of their duty of care." *Emerald Partners*, 787 A.2d at 90.  WWC's Certificate of Incorporation includes such an exculpatory clause. *See* Hradil Decl., Ex. A. (providing that "[n]o director shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL.").  This provision forecloses any duty of care claims against the directors as a matter of law. *See Malpiede*, 780 A.2d at 1091, 1101 (affirming dismissal of duty of care claim pursuant to Section 102(b)(7)).

*Contests*, 592 PLI/Corp. 449, 460 (Jan. 11, 1988) (The business judgment rule recognizes that stockholders give officers and directors a "mandate to oversee the countless business decisions which must be made daily in the course of managing an enterprise."). The protection of the business judgment rule applies equally to officers and directors. *In re Tower Air*, 416 F.3d 229, 238 (3d Cir. 2005) (applying business judgment rule to directors and officers). "Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task." *Id.*

Plaintiff complains that WWC's response to the cyberattacks did not redress the vulnerabilities in its data-security system "in a reasonable time frame to prevent" the second and third attacks. Compl. ¶ 45. Plaintiff's opinion about what constitutes "appropriate steps" in a "reasonable time frame," however, cannot supplant the Officer Defendants' business judgment. As discussed above, the allegations in the Complaint demonstrate that ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ *See* Compl. Ex. F at 3. In light of these facts, that criminal hackers perpetrated second or third attacks, does not make plausible an inference that the Officer Defendants acted grossly negligently, irrationally, or with inattention. *See In re Tower Air*, 416 F.3d at 238.

**B.    Plaintiff Alleges No Concealment of Material Information from Investors.**

Plaintiff also alleges that both the officers and directors breached their duty of loyalty by "causing or allowing the Company to conceal the data breaches from investors." Compl. ¶¶ 104-106. Specifically, the Complaint faults the Individual Defendants for failing to disclose the three data breaches to investors prior to July 25, 2012, when WWC announced the filing of the FTC Action in its Form 10-Q Quarterly Report. *Id.* ¶ 66. Plaintiff's disclosure claim should be dismissed because it fails to allege an actionable claim for several independent reasons.

Plaintiff fails to state a claim because the Complaint offers no cognizable theory to suggest that the Individual Defendants had any duty to disclose information about the data-security breaches, either prior to or after filing WWC's July 2012 Form 10-Q.  Although it is well settled under Delaware law that the fiduciary duty of disclosure "inheres any time a corporate board of directors seeks stockholder action," *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996) (citing *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992)), the Complaint does not allege that any stockholder action was sought, nor how disclosure of the data breaches would have been material.[7]

In the absence of a request for shareholder action, a plaintiff must show that directors were "***deliberately misinforming*** shareholders about the business of the corporation, either directly or by a public statement." *Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1998).  The Delaware Supreme Court "set a very high bar for plaintiffs seeking to prove [such] a claim [of knowing conduct] . . . . This level . . . is similar to, but even more stringent than, the level of scienter required for common law fraud." *Metro Commc'n Corp. BVI v. Advanced.Mobilecomm Techs. Inc.*, 854 A.2d 121, 157-58 (Del. Ch. 2004) (citations omitted).  The Complaint pleads no facts suggesting that the Individual Defendants "deliberately misinformed" the shareholders about the cyberattacks and fails to support any inference of scienter, let alone an inference sufficient to meet this heightened standard.

Unable to plead that the Individual Defendants breached a duty owed to stockholders, the Complaint instead implies that the Defendants ran afoul of an unidentified SEC disclosure requirement.  Plaintiff cites an SEC comment letter regarding the Company's July 2012 Form 10-Q, which "note[d] the disclosure" concerning the data breaches and merely advised the Company: "Beginning with your next Form 10-Q please state that you have experienced data breach incidents

---

[7]   Notably, the market did not react negatively: WWC's stock price rose on both July 25, 2012, the day WWC disclosed the data breaches, and on the day following the disclosure. *See* http://www.wyndhamworldwide.com/investors/historical-price-lookup.

in the past in order to provide the proper context for your risk factor disclosure." *See* Compl. ¶ 67 (emphasis omitted). But the SEC took no enforcement action against WWC and its comment letter identifies no violation of SEC rules or regulations, but merely requested that WWC disclose the fact of the past incidents in the future. In any event, Plaintiff offers no cognizable theory under which his allegations amount to a claim or allege any damages to the Company.

**C.      Plaintiff Fails to State a Claim for Corporate Waste.**

Plaintiff asserts that the Individual Defendants "wasted corporate assets" by failing to consider the shareholders' interests; "failing to implement adequate internal controls to detect and prevent" data breaches; paying improper compensation and bonuses; and by incurring costs in connection with the breaches and FTC Action. *Id.* ¶ 111. None of these allegations state a claim for corporate waste. Rather, Plaintiff's claims are nothing more than an attempt to recast deficient fiduciary duty claims.

It is well-settled under Delaware law that:

> A claim of waste will arise only in the rare, "unconscionable case where directors irrationally squander or give away corporate assets." This onerous standard for waste is a corollary of the proposition that where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be "attributed to any rational business purpose."

*In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (citing *Brehm*, 746 A.2d at 263); *see also Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997) ("Roughly, a waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade. . . . Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received.") (citation omitted). "Corporate waste is very rarely found in Delaware courts because the applicable test imposes such an onerous burden . . . ." *In re Walt Disney Co.*, 907 A.2d at 748.

Plaintiff's allegations that the Individual Defendants failed to consider properly the shareholders' interests and failed to implement adequate internal controls are not cognizable as a claim for corporate waste. These allegations merely repackage the inadequately pleaded fiduciary duty claims. *See Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004) (deeming claims for abuse of control, gross mismanagement, and waste of corporate assets as "repackag[ed]" claims for breach of fiduciary duty, because they were each premised on the same factual predicate). To support a claim for waste based on "paying improper compensation and bonuses," the Complaint must contain particularized allegations that "overcome the general presumption of good faith by showing that the board's decision" to pay compensation and bonuses "was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests." *White v. Panic*, 783 A.2d 543, 554 n.-36 (Del. 2001). Even if Plaintiff had adequately pleaded that the officers and directors breached their fiduciary duties—and he has not—the Complaint contains no facts to support the conclusion that no reasonable person would have considered the Individual Defendants' services to be worth the compensation they received. *See Lewis*, 699 A.2d at 336.

Finally, Plaintiff's waste allegations based on litigation and remedial costs are conclusory and circular, and fail to state a plausible claim under Delaware law. Plaintiff cannot claim on the one hand that the Individual Defendants were obligated to discover and remedy data-security deficiencies and on the other hand claim that the costs of doing so are "waste." What is more, Plaintiff pleads no basis to infer that the costs of investigating and remedying the deficiencies and defending the Company against the FTC Action "served no corporate purpose." To the contrary, given the ever-increasing sophistication of hackers and cyber-crimes, WWC would have continued

to enhance and upgrade its data-security systems and protocols in response to other data breaches at other businesses[8] and the changing technological landscape.

### D.   Plaintiff Fails to State a Claim for Unjust Enrichment.

Plaintiff's unjust enrichment claim alleges that the Individual Defendants improperly enriched themselves "as a result of the compensation they received while breaching fiduciary duties owed to WWC." Compl. ¶ 116.  Again, Plaintiff improperly attempts to repackage his breach of fiduciary duty claims, this time as a claim for unjust enrichment. *See, e.g., Frank v. Elgamal*, 2014 WL 957550, at *31 (Del. Ch. March 10, 2014) (noting that plaintiff's unjust enrichment claim was based on the "exact same theory" as its deficient fiduciary duty claim); *Diversified Grp., Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 461 (S.D.N.Y. 2001) ("[T]o the extent [plaintiffs'] claim for unjust enrichment is based upon [defendants'] alleged breach of fiduciary duties, this claim is duplicative."). Because the "unjust enrichment claim depends *per force* on the breach of fiduciary duty claim," and the Complaint does not suggest that this claim "is materially broader than or different from the analogous breach of fiduciary duty claim," dismissal of the Plaintiffs' fiduciary duty claim dooms the unjust enrichment claim. *Frank*, 2014 WL 957550, at *31.

And, even if it were not duplicative, Plaintiff's unjust enrichment claim would still fail because the Complaint fails to plead facts to support each element of the claim: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).  The Complaint makes nothing more than a conclusory assertion that the

---

[8]    For instance, in the  months preceding the first data breach, there were a number of reported data breaches, including the hacking of 94 million credit card numbers from TJX Companies, Inc. *See* Ross Kerber, *Banks Claim Credit card Breach Affected 94 Million Accounts*, N.Y. TIMES, Oct. 24, 2007, *available at* http://www.nytimes.com/2007/10/24/technology/24iht-hack.1.8029174.html; *see also* TJX Companies, Inc. Annual Report (Form 10-K), at 7-9 (FY 2007) (discussing the company's discovery of the computer intrusion and the scope of the customer information believed to have been stolen).

Defendants were unjustly enriched by receiving *any* compensation.  *See* Compl. ¶ 116.  Read plainly, Plaintiff implausibly contends that the directors and officers—with all manner of responsibilities for running a large corporation—should have been paid *nothing* because third-party criminals attacked Wyndham-branded hotel computers.  But in any event, conclusory statements about the regular salary, benefits, and bonuses that each of the Defendants received, *see id.* ¶¶ 14-23, are insufficient to plead an enrichment.  *See In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2010) (Delaware law does not regard ordinary officer and director compensation with suspicion; there is no "authority . . . that the mere retention of directors' and officers' ordinary compensation can sustain an unjust enrichment claim predicated on allegations that these defendants breached their fiduciary duties.").  Because Plaintiff fails to plead facts showing that the defendants' "compensation was profligate or paid for an improper purpose, the allegations of unjust enrichment fail to state a claim to relief that is plausible on its face."  *Id.* at 466 (citations and quotations omitted).  Finally, the Complaint is also devoid of facts to indicate a "causal relationship" between the alleged wrongful acts and an enrichment.  *Id.*

## III.   PLAINTIFF'S CLAIMS ARE NOT RIPE AND FAIL TO PLEAD COGNIZABLE DAMAGES.

Plaintiff claims that WWC has been damaged by the FTC Action because that lawsuit "poses the risk of tens of millions of dollars in further damages to the Company."  Compl. ¶ 6.  Plaintiff seeks to recover "the amount of damages sustained by the Company", including the potential damages that WWC may face in the FTC Action.  *See id.* ¶¶ 69(a), 108 and 43.  Any liability for the wrongdoing alleged in the FTC Action has yet to be established, however, and damages (if any) have yet to be determined.  Numerous courts have held that claims for damages based on the "costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct" are not recoverable.  *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006); *see also In re*

28

*Facebook Inc. IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 475 (S.D.N.Y. 2013); *Dollens v. Zionts*, 2002 WL 1632261, at *9 (N.D. Ill. July 22, 2002); *In re United Telecomms., Inc. Sec. Litig.*, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993); *In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510, 516 (E.D.N.Y. 1991). Because the FTC Action is ongoing and Plaintiff's damages claim is tied to the outcome of that case, those alleged damages are entirely speculative and unrecoverable. *In re Facebook*, 922 F. Supp. 2d at 474-75 ("[W]here [damages are] contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed.") (quotations omitted).

Plaintiff's allegations of reputational harm also are insufficient. Plaintiff offers only a conclusory assertion that "WWC's failure to protect its customers' personal and financial information has damaged its reputation with its customer base." Compl. ¶ 6. There are no well-pleaded facts to support this bare allegation. A "'showing of reputational harm,'" however "'must be concrete and corroborated, not merely speculative.'" *In re Facebook Inc.*, 922 F. Supp. 2d at 474 (quoting *Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005)). Unsupported allegations that a company suffered an injury to its credibility warrants dismissal. *See In re United Telecomms.*, 1993 WL 100202, at *2 (allegation that company suffered injury to its credibility was not supported by pleaded facts and insufficient to withstand dismissal); *In re Symbol Techs.*, 762 F. Supp. at 517 (allegation that defendants undermined the company's credibility in the marketplace was "boilerplate" and insufficient to withstand dismissal).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

29

Dated:  May 5, 2014

Respectfully submitted,

By:  *Jennifer A. Hradil JTQ*

Jennifer A. Hradil, Esq.
Justin T. Quinn, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
jhradil@gibbonslaw.com
jquinn@gibbonslaw.com

James P. Gillespie, P.C., D.C. Bar 427773
Emily P. Hughes, D.C. Bar 984580
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
james.gillespie@kirkland.com
emily.hughes@kirkland.com
*(pro hac vice applications pending)*

*Attorneys for Individual Defendants
and Nominal Defendant*